IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAULA K. WAXLER,<br><br>    Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF<br>SOCIAL SECURITY,<br><br>    Defendant. | Civil Action No. 14-205 |

## MEMORANDUM AND ORDER OF COURT

AND NOW, this 17th day of March, 2015, upon due consideration of the parties' cross-motions for summary judgment relating to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for disability insurance benefits and supplemental security income under Titles II and XVI, respectively, of the Social Security Act ("Act"), IT IS ORDERED that the Commissioner's motion for summary judgment (Document No. 11) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 9) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the factual inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff protectively filed her pending application for disability insurance benefits on June 18, 2010, and her pending application for supplemental security income on November 14, 2010, both applications alleging a disability onset date of October 21, 2010, due t, *inter alia*, cognitive deficits, migraine headaches and hypothyroidism. Plaintiff's applications were denied initially. At plaintiff's request an ALJ held a hearing on September 5, 2012, at which plaintiff, represented by counsel, appeared and testified. On September 12, 2012, the ALJ issued a decision finding that plaintiff is not disabled. On January 7, 2014, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 48 years old at the time of the ALJ's decision and is classified as a younger person under the regulations. 20 C.F.R. §§404.1563(c) and 416.963(c). She has a high school education plus an associate's degree. Plaintiff has past relevant work experience as a general office clerk and bank teller, but she has not engaged in any substantial gainful activity since her alleged onset date.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that although the medical evidence establishes that plaintiff suffers from the severe impairments of status posttraumatic brain injury, migraine headaches, thrombosis of the left lower extremity, hypothyroidism, obesity, cognitive deficits and dysthymia, those impairments, alone or in combination, do not meet or equal the criteria of any of the impairments listed at Appendix 1 of 20 C.F.R., Part 404, Subpart P.

AO 72
(Rev. 8/82)

The ALJ also found that plaintiff retains the residual functional capacity to engage in work at the sedentary exertional level but with numerous restrictions necessary to accommodate her physical and mental impairments. (R. 16).[1] Taking into account these restrictions, a vocational expert identified numerous categories of jobs which plaintiff can perform based upon her age, education, work experience and residual functional capacity, including addresser, ticket checker and surveillance system monitor. Relying on the vocational expert's testimony, the ALJ found that, although plaintiff cannot perform her past relevant work, she is capable of making an adjustment to numerous jobs existing in significant numbers in the national economy. Accordingly, the ALJ concluded that plaintiff is not disabled under the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §§423(d)(2)(A) and §1382c(a)(3)(B).

---

[1] Specifically, the ALJ found that plaintiff "has the residual functional capacity to perform sedentary work ... except she may not operate foot controls. [She] is also prohibited from crawling, kneeling, climbing, squatting or balancing on heights. She is limited to simple, repetitive tasks with routine work processes and settings. [She] may not perform high stress work, which includes work involving high quotas or close attention to quality production standards. She may not work with the public or perform activities requiring teamwork." (R. 16).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability.[2] 20 C.F.R. §§404.1520 and 416.920. If the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 124 S.Ct. 376 (2003).

Here, plaintiff raises two challenges to the ALJ's determination that plaintiff is not disabled: (1) the ALJ's residual functional capacity finding failed to account for all of plaintiff's work-related mental limitations; and, (2) the ALJ's residual functional capacity finding failed to account for all of plaintiff's work-related physical limitations. Upon review, the court is satisfied that the ALJ's residual functional capacity finding is supported by substantial evidence.

At step 5 of the sequential evaluation process the ALJ must show that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with her medical impairments, age, education, past work experience, and residual functional capacity. 20 C.F.R. §§404.1520(a)(4)(v) and 416.920(a)(4)(v). Residual functional capacity is defined as the most an individual still can do in a work setting despite the limitations caused by her impairments. Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001); 20 C.F.R. §§404.1545(a)(1) and 416.945(a)(1).

---

[2] The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether she has a severe impairment; (3) if so, whether her impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents her from performing her past-relevant work; and, (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of her age, education, work experience, and residual functional capacity. 20 C.F.R. §§404.1520 and 416.920; Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003). In addition, when there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow the procedure for evaluating mental impairments set forth in the regulations. Plummer, 186 F.2d at 432; 20 C.F.R. §§404.1520a and 416.920a.

Residual functional capacity is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work-setting on a regular and continuing basis, which means "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p. In assessing residual functional capacity, the ALJ is to consider all of the relevant medical and other evidence in the case record in determining the individual's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. §§404.1545(a)(3)-(4) and 416.945(a)(3)-(4); SSR 96-8p. In regard to mental abilities, the ALJ first must assess the nature and extent of the claimant's mental limitations and restrictions and then determine the claimant's residual functional capacity for work activity on a regular and continuing basis. 20 C.F.R. §§404.1545(c) and 416.945(c). The ALJ's residual functional capacity finding must "'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" Fargnoli, 577 F.3d at 41 (citation omitted).

Plaintiff's first argument is that the ALJ's residual functional capacity finding failed to incorporate all of plaintiff's work-related *mental* limitations. In this regard, plaintiff contends that, despite giving "significant weight" to the opinion of Dr. Marion, the consultative examiner,[3] and "great weight" to the opinion of Dr. Link, the state agency reviewing psychologist,[4] the ALJ failed to incorporate into his residual functional capacity finding and

---

[3] Under the Social Security Regulations, an ALJ is to evaluate every medical opinion received, regardless of its source, and is required to consider numerous factors in deciding the weight to which each opinion is entitled, taking into account numerous factors including the opinion's supportability, consistency and specialization. 20 C.F.R. §§404.1527(c) and 416.927(c). Importantly, the opinion of any physician on the issue of what an individual's residual functional capacity is or on the ultimate determination of disability never is entitled to special significance. 20 C.F.R. §§404.1527(d) and 416.927(d); SSR 96-5p.

[4] Pursuant to the Regulations, state agency medical consultants are "highly qualified physicians ... who are also experts in Social Security disability evaluation." 20 C.F.R. §§404.1527(e)(2)(i) and 416.927(e)(2)(i). Accordingly, while not bound by findings made by reviewing physicians, the ALJ is to consider those findings as opinion evidence, and is to evaluate them under the same standards as all other medical opinion evidence. Id.; SSR 96-6p.

resultant hypothetical to the vocational expert all of the limitations set forth in those opinions. Upon review of the relevant records and the ALJ's decision, this court is satisfied that the ALJ's residual functional capacity finding and resultant hypothetical to the vocational expert adequately accommodate all of plaintiff's mental limitations supported by the record.

Dr. Marion performed a consultative psychological evaluation and submitted a report dated February 15, 2011, in which he opined that plaintiff has "marked" restrictions in her ability to understand, remember and carry out detailed instructions, and "moderate" restrictions in her ability to make judgments on simple work-related decisions and to respond appropriately to usual work pressures and routine changes in a work setting. (R. 370). For the most part, Dr. Link, the state agency psychologist, concurred with Dr. Marion's opinion by concluding that plaintiff is markedly limited in her ability to understand, remember and carry out detailed instructions, and moderately limited in several other areas of work-related mental functioning. (R. 58-62).

It is clear from the record that the ALJ adequately considered the foregoing opinions in assessing plaintiff's residual functional capacity and that he incorporated into his finding all of the limitations that reasonably could be supported by the record. (R. 18-19). Indeed, the ALJ expressly noted that he was giving Dr. Marion's report "significant weight," and Dr. Link's opinion "great weight," and the court is satisfied that the ALJ's residual functional capacity finding, which limits plaintiff to "simple, repetitive tasks with routine work processes and settings," and precludes her from performing "high stress work, which includes work involving high quotas or close attention to quality production standards" and from "work[ing] with the public or perform[ing] activities requiring teamwork," (R. 16), more than adequately accounts for the limitations set forth in the opinions of Dr. Marion and Dr. Link. Moreover, plaintiff has

AO 72
(Rev. 8/82)

not advanced any additional limitations that the ALJ failed to incorporate which are not otherwise covered by the ALJ's residual functional capacity finding.

To the extent plaintiff contends that the ALJ's residual functional capacity finding conflicts with his own step 3 finding that plaintiff has "moderate" limitations in social functioning and concentration, persistence and pace, the court again disagrees, as the ALJ's residual functional capacity finding adequately addresses plaintiff's moderate limitations in both social functioning and concentration, persistence and pace. *See, e.g.*, Parks v. Commissioner of Social Security, 401 Fed.Appx. 651, 655-56 (3d. Cir. 2010)( hypothetical limiting claimant to performing simple, unskilled work with restricted social interactions adequate to account for moderate limitations in social functioning and concentration, persistence and pace); McDonald v. Astrue, 293 Fed.Appx. 941, 946-47 (3d Cir. 2008)(hypothetical limiting claimant to "simple, routine tasks" adequate to accommodate "moderate" limitations in concentration, persistence and pace); Menkes v. Astrue, 262 Fed.Appx. 410, 412-13 (3d Cir. 2008)(no error in hypothetical restricting claimant to "simple routine tasks" to account for moderate limitations in concentration, persistence and pace).

Plaintiff's second argument is that the ALJ's residual functional capacity finding also failed to incorporate all of plaintiff's work-related *physical* limitations. In this regard, plaintiff contends that the ALJ failed to give appropriate weight to a physical capacity evaluation submitted by a treating source, Dr. John Bayuk, who opined that plaintiff would "often" require additional breaks during a work day and that she would experience "at least 7 bad days per month" during which she would not be able to complete an 8-hour shift. (R. 580). Again, the court finds no error in the ALJ's evaluation of this evidence.

Under the Social Security Regulations and the law of this circuit, opinions of treating physicians are entitled to substantial, and at times even controlling, weight. 20 C.F.R. §§404.1527(c)(2) and 416.927(c)(2); Fargnoli, 247 F.3d at 33. Where a treating physician's opinion on the nature and severity of an impairment is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, it will be given controlling weight. Id. However, when a treating source's opinion is not entitled to controlling weight, it is to be evaluated and weighed under the same standards applied to all other medical opinions, taking into account numerous factors, including the opinion's supportability, consistency and specialization. 20 C.F.R. §§404.1527(c) and 416.927(c). Importantly, the opinion of any physician on the issue of what an individual's residual functional capacity is or on the ultimate determination of disability never is entitled to special significance. 20 C.F.R. §§404.1527(d) and 416.927(d); SSR 96-5p.

Here, the ALJ adhered to the foregoing standards in evaluating the medical evidence. The ALJ specifically addressed the report of Dr. Bayuk and, although he gave that report "some weight", he adequately explained why he rejected the additional limitations regarding a need for excessive breaks and absences. (R. 18). In particular, the ALJ properly observed that "the evidence of record and [plaintiff's] activities of daily living do not support" those limitations. (R. 18).

The evidence of record, as outlined by the ALJ in his thorough opinion, supports his evaluation of Dr. Bayuk's report. The medical evidence as it relates to plaintiff's physical impairments, set forth and analyzed in detail in the ALJ's decision, establishes that plaintiff's severe physical impairments, including seizures, migraine headaches and hypothyroidism, as

well as her non-severe impairment of sleep apnea, all are well-controlled through medication and other treatments. (R. 17-18).

Moreover, as required under the regulations, the ALJ in this case properly considered plaintiff's subjective complaints in light of the medical evidence and all of the other evidence of record, including plaintiff's daily activities (20 C.F.R. §§404.1529(c) and 416.929(c); *see also* SSR 96-7p) and did a thorough job in his decision explaining why plaintiff's statements concerning "the intensity, persistence and limiting effects of [her] symptoms are not credible" to the extent they conflict with the ALJ's residual functional capacity. (R. 17-19). Plaintiff has not challenged the ALJ's credibility determination in this appeal and the court finds no error in the ALJ's evaluation of plaintiff's subjective complaints of pain and limitations.

In sum, the court is satisfied that the ALJ's residual functional capacity finding is supported by substantial evidence as outlined in the decision and that the ALJ's hypothetical to the vocational expert incorporating that residual functional capacity finding adequately accounted for all of plaintiff's mental and physical limitations that are supported by the objective evidence. Podedworny v. Harris, 745 F.2d 210 (3d Cir. 1984)(RFC and hypothetical to the vocational expert must reflect only those impairments and limitations supported by the record). Accordingly, the vocational expert's response to that hypothetical indicating that, despite those restrictions, plaintiff retains the ability to perform the identified sedentary jobs, constitutes substantial evidence supporting the ALJ's finding that plaintiff is not disabled within the meaning of the Act.

AO 72
(Rev. 8/82)

After carefully and methodically considering all of the medical evidence of record and plaintiff's testimony, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Accordingly, the decision of the Commissioner must be affirmed.

*Gustave Diamond*
Gustave Diamond
United States District Judge

cc: Lindsay Fulton Osterhout, Esq.
521 Cedar Way
Suite 200
Oakmont, PA 15139

Michael Colville
Assistant U.S. Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219